THE PEOPLE *ex rel.* GWEN MARTIN, Director, Department of Labor, Plaintiff-Appellant, v. SCHWARTZ OIL FIELD SERVICES, INC., Defendant-Appellee.

Fifth District No. 5—89—0579

Opinion filed August 31, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellant.

Michael T. Roumell, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

On September 23, 1988, the Illinois Department of Labor (IDOL) filed a complaint in the circuit court of Marion County alleging that the defendant, Schwartz, had violated various provisions of the Illinois Minimum Wage Law (IMWL) (Ill. Rev. Stat. 1987, ch. 48, par. 1001 *et seq.*). Specifically, the complaint alleged that Schwartz failed to pay its employees time and a half for overtime work during the period between July 1, 1982, and January 21, 1985. On November 28, 1988, Schwartz filed a motion to dismiss, alleging that the suit was barred by the three-year statute of limitations contained in section 12(a) of the IMWL (Ill. Rev. Stat. 1987, ch. 48, par. 1012). After a hearing, the court granted the motion and dismissed the case. This appeal followed.

The record reveals that in August of 1987, the IDOL commenced an investigation of Schwartz Oil's payroll records. The compliance officer concluded that Schwartz owed overtime pay to 13 employees for the period of July 1, 1982, through January 21, 1985. In a letter dated March 28, 1985, IDOL informed Schwartz of its finding and gave Schwartz 10 days to reply. Schwartz responded on April 12, 1985, informing IDOL that it disagreed with the finding and requesting a formal hearing. After meeting informally with Schwartz and several of the employees in question, a formal hearing was scheduled for July 16, 1987. The meeting was cancelled without explanation by IDOL. On July 27, 1987, Schwartz received a request for compliance from IDOL. Schwartz responded by again requesting a formal hearing. On May 5, 1988, Schwartz received a letter from the Attorney General's office stating that IDOL had forwarded the file to them for collection. The present action was brought pursuant to section 12(b) of the IMWL. Ill. Rev. Stat. 1987, ch. 48, par. 1012(b).

The sole issue on appeal is whether the three-year statute of limi-

tations set forth in section 12(a) of the IMWL applies to claims brought by the State under section 12(b).

■■ When interpreting a statute to determine the intent of the legislature, courts look first to the language of the statute itself. (*People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 432 N.E.2d 855.) Where that language is clear and unambiguous, the court will apply the law as written, without resort to various construction aids. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 447 N.E.2d 394; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 361 N.E.2d 585.

We must therefore first examine the language of section 12, which provides:

> "(a) If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and any agreement between him and his employer to work for less than such wage is no defense to such action. Every such action shall be brought within 3 years from the date of the underpayment. Such employer shall be additionally liable to the employee for punitive damages in the amount of 2% of the amount of any such underpayments for each month during which such underpayments remain unpaid, or in an amount equal to such underpayments, whichever is smaller.

> (b) The Director is authorized to supervise the payment of the unpaid minimum wages and the unpaid overtime compensation owing to any employee or employees under Sections 4 and 4a of this Act and may bring any legal action necessary to recover the amount of the unpaid minimum wages and unpaid overtime compensation and an equal additional amount as punitive damages, and the employer shall be required to pay the costs. Any sums thus recovered by the Director on behalf of an employee pursuant to this subsection shall be paid to the employee or employees affected. Any sums which, more than one year after being thus recovered, the Director is unable to pay to an employee shall be deposited into the General Revenue Fund." Ill. Rev. Stat. 1987, ch. 48, par. 1012.

■■ We find the language of section 12 of the IMWL to be unambiguous and clear on its face. Section 12(a) provides that employees may bring suit to recover the amount of any underpayment of wages, and that such action must be commenced within three years of the

underpayment. Section 12(b) provides that IDOL may bring any legal action necessary to recover unpaid overtime wages due an employee pursuant to section 4(a) of the IMWL and that such sums shall be paid to the employee. No limitation period is contained in section 12(b). It is clear from the language of the statute that there is no statute of limitations on actions brought by the State pursuant to section 12(b).

 Schwartz argues that the General Assembly intended that the three-year limitation period in section 12(a) be applicable to actions brought by the Department of Labor (IDOL) under section 12(b). It contends that section 12 of the IMWL provides a framework by which an action may be brought to collect unpaid overtime wages, either by the employee under section 12(a) or by IDOL under section 12(b) on the employee's behalf. If the legislature decided to limit the employee's ability to recover to three years, Schwartz maintains, it is only logical that it would likewise limit the State's ability to recover on the employee's behalf. There would be no incentive for the employee to bring the action within three years if he could wait and let the State do it, especially given the fact that the employee could receive more punitive damages if the State brought the action under section 12(b) than he could if he brought the action himself under section 12(a).

We do not agree with Schwartz's analysis. To the contrary, we find the absence of the three-year period in section 12(b) to be indicative of the legislature's intent not to apply the limitation period to actions brought by IDOL, and the legislative history of section 12 supports our finding. Originally, there was no statute of limitations included in section 12 of the IMWL. Section 12(a) provided that an employee could bring an action to collect unpaid wages and section 12(b) provided that the director of IDOL could take an assignment of such wage claim and bring the necessary action. In 1983, section 12(a) was amended, adding the three-year statute of limitations and a provision allowing the employee to collect punitive damages equal to 2% of the wage claim. Section 12(b) was not changed, but section 12(c) was added, providing that IDOL could initiate the suit on its own, without a request by the employee, and that where the director brought the claim, the employer would be liable for punitive damages equal to the wage claim. Had the General Assembly intended to impose the three-year limitation period on actions brought by IDOL, it would have added such language to section 12(b) or section 12(c). In 1985, the IMWL was again amended. Section 12(b) was deleted and section 12(c) was renumbered 12(b). Again, the legislature had the opportunity to add the limitation provision to section 12(b), but declined to do so.

■■■ ■ Having concluded that there was no legislative intent to impose a statute of limitations on actions brought by the State pursuant to section 12(b), we need not consider the issue of whether the common law governmental immunity to statutes of limitation is applicable here. Were we to consider it, we would find that it does apply to the statute in question. As a general rule, statutes of limitation may not be asserted against the State in actions involving "public rights." (*City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 874.) The rationale behind this rule is that the public should not suffer because of the negligence of its officers and agents in failing to assert causes of action which belong to the public. (*Shelbyville*, 96 Ill. 2d at 461, 452 N.E.2d at 876.) The rule does not apply, however, where the governmental immunities limitation is expressly abrogated by the statute. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 152-53, 485 N.E.2d 1076, 1080.) In those situations, the governmental immunities limitation will not bar a statute of limitations defense. The governmental immunities limitation would be applicable in this case because we find the right in question to be a public, as opposed to private, right. Schwartz maintains that only the employees will benefit from the State's action and that the policy reasons underlying the rule are not present. We do not agree. The purpose of the IMWL is to ensure adequate wage standards for the benefit of both workers and the taxpayers, and a violation of the law is a breach of public policy. (Ill. Rev. Stat. 1987, ch. 48, par. 1002.) The State has a clear and definite interest in enforcing this policy.

■■ Schwartz also argues that even if this court finds that the statute of limitations is not applicable to the State, we should nevertheless affirm the trial court because the individual employees assigned their rights to take action to IDOL and, as their assignee, IDOL acquired no greater rights than they had. The IDOL, Schwartz maintains, is bound by virtue of the assignment to the three-year limitation period because the employees were. This argument ignores the fact that IDOL possesses the statutory authority to bring an action of its own right under section 12(b), and the assignment does not diminish this power.

For the foregoing reasons, the judgment of the circuit court of Marion County is reversed and remanded.

Reversed and remanded.

HARRISON and HOWERTON, JJ., concur.