THE PEOPLE *ex rel.* GWEN MARTIN, Director, Department of Labor, Plaintiff-Appellant, v. IRIS LIPKOWITZ, Adm'r of the Estate of Seymour Lipkowitz, Deceased, *et al.*, Defendants-Appellees.

Third District   No. 3—91—0088

Opinion filed March 12, 1992.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and John A. Morrissey, Assistant Attorney General, of Chicago, of counsel), for appellant.

Jack Schwartz, of Rock Island, for appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Action was brought in two counts by the Director of the Illinois Department of Labor (the Director) on behalf of five former employees of the now defunct La Salle County Packing Company, Inc., to recover unpaid vacation leave benefits (count I) and statutory penalties (count II). The complaint, filed in the circuit court of La Salle County on February 8, 1990, charged violations of the Illinois Wage Payment and Collection Act (Ill. Rev. Stat. 1987, ch. 48, par. 39m—1 *et seq.*) (IWPCA) which allegedly occurred during the period January 13, 1983, through January 12, 1984. According to the complaint, defendants Rudolph Lipkowitz and Ronald Press and Seymour Lipkowitz, deceased, were directors and principal officers of the corporation during that period. Attached to the complaint are copies, *inter alia,* of correspondence between representatives of the Illinois Department of Labor and Ronald Press and Seymour Lipkowitz following an August 8, 1984, hearing with respect to wages due the employees. These documents tend to establish that the employer conceded that vacation pay was owed and that such would be paid when the La Salle County Packing Company's real estate was sold or leased.

Defendants moved to dismiss the complaint for failure to bring suit within five years pursuant to section 13—205 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—205). The Director resisted the motion on the ground of governmental immunity. The trial court disagreed with the Director's position. The court found that the complaint was based on a private, rather than public, cause of action and granted defendants' motion to dismiss.

In this appeal, the Director argues that the rights she is asserting on behalf of these employees belong to the general public, not just a handful of employees. Where public rights are sought to be vindicated by the State, common law governmental immunity applies and no statute of limitation (unless expressly provided for in legislation creat-

ing the cause of action) may be asserted so as to bar the State's suit. (*City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 874.) Defendants contend that since the statute here at issue permits aggrieved employees to pursue their own claims (Ill. Rev. Stat. 1987, ch. 48, par. 39m—11), the "public rights" asserted by the Director co-exist with "private rights," and the five-year limitation of the Code of Civil Procedure would therefore apply so as to bar the Director's cause of action.

The question before us appears to be one of first impression insofar as it pits the doctrine of governmental immunity from statutes of limitation against the five-year statute of limitations of the Illinois Code of Civil Procedure in a suit brought under the IWPCA by the Director of the Department of Labor. We find ample relevant authority, however, to guide us.

The doctrine of governmental immunity from statutes of limitations was cogently analyzed by Illinois Supreme Court Justice Seymour Simon in *City of Shelbyville*, where defendant argued that, inasmuch as the doctrine of sovereign immunity has been disavowed in Illinois, the doctrine of governmental immunity from statutes of limitations should no longer be a viable theory either. The court disagreed, stating:

"[T]he doctrine of immunity from statutes of limitation '*** is supported in modern law by the policy judgment that the public should not suffer because of the negligence of its officers and agents' in failing to promptly assert causes of action which belong to the public. (*State ex rel. Board of University & School Lands v. Andrus* (8th Cir. 1982), 671 F.2d 271, 274, *rev'd on other grounds sub nom. Block v. North Dakota ex rel. Board of University & School Lands* (1983), 461 U.S. [273], 75 L. Ed. 2d 840, 103 S. Ct. 1811; see also *Guaranty Trust Co. v. United States* (1938), 304 U.S. 126, 132, 82 L. Ed. 1224, 1228, 58 S. Ct. 785, 788-89; *United States v. Central Soya, Inc.* (7th Cir. 1982), 697 F.2d 165, 166; 34 Am. Jur. *Limitation of Actions* secs. 388 through 399, and particularly at page 301 (1941).) In accord with the rationale, the practice in Illinois has been to determine whether the right which the plaintiff governmental unit seeks to assert is in fact a right belonging to the general public, or whether it belongs only to the government or to some small and distinct subsection of the public at large. [Citations.]

The question of who would be benefited by the government's action and who would lose by its inaction is of para-

mount importance in statute-of-limitations immunity cases ***.
***

"*** Inasmuch as citizens who share a public right which has been violated may be unable in certain cases to bring suit on their own behalf while the government has a representative interest in the controversy [citations], abolition of the government's immunity from limitations defenses would expose these citizens to the harsh consequences of neglect by officials over whose actions they had no control. Long delays by the government in instituting suit, of course, cause harm to the defendant and are in the interest of no one; however, we are unwilling to change a well-established rule of law so as to leave citizens who have suffered an injury remediless or make them wait until the next election for their 'remedy.' " 96 Ill. 2d at 461-63, 451 N.E.2d at 876-77.

At issue in *Shelbyville* was the municipality's interest in the proper construction and repair of certain streets in defendant home builder's subdivision. Although defendant argued that the interest was "private," the court on appeal held that it was "public." The *Shelbyville* court reasoned:

"It is apparent that the safety of all persons who have occasion to use the streets at issue here will depend on the workmanlike construction and maintenance of these streets. Insofar as it is the continuing responsibility of cities to ensure such construction and maintenance for the use of the public (Ill. Rev. Stat. 1969, ch. 24, par. 9—1—1 *et seq.*), the inability of the city of Shelbyville to enforce its annexation agreement or compel payment by the defendant will affect the city's finances and may impair its ability to build or oversee the construction or maintenance of streets within its jurisdiction in the future." 96 Ill. 2d at 464, 451 N.E.2d at 878.

In the case before us, the question we must answer is whether the public interest in enforcing the IWPCA is sufficient to permit the Director to pursue its claims against the employer without regard to statutory time-barring. Although not cited by either party, we note that the court in *Clark v. Western Union Telegraph Co.* (1986), 141 Ill. App. 3d 174, 490 N.E.2d 36, held that the aggrieved employee who brought suit under the Act for underpaid sales commissions was limited by the applicable period of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—101 *et seq.*). Clark argued, *inter alia*, that section 14(a), which provides that "[e]ach day during which any violation of this Act continues shall constitute a separate and distinct

offense" (Ill. Rev. Stat. 1987, ch. 48, par. 39m—14(a)), should be read so as to toll the period of limitations until the employer paid the indebtedness in question. The court rejected the argument, stating:

> "We note that plaintiff's interpretation of the Act would negate the statute of limitations in all cases of disputed compensation. We do not believe that the legislature intended so far-reaching a result. Section 14 specifically addresses misdemeanor penalties, and the Act provides separately for the preservation of civil claims by aggrieved employees. (Compare Ill. Rev. Stat. 1977, ch. 48, par. 39m—14, with Ill. Rev. Stat. 1977, ch. 48, par. 39m—11.) We hold that the continuing violation provision of section 39m—14 applies to actions brought by the Department of Labor, and that civil suits by aggrieved employees are governed by the limitations provisions of the Code of Civil Procedure. (See Ill. Rev. Stat. 1983, ch. 110, pars 13—101 *et seq.*)" 141 Ill. App. 3d at 177, 490 N.E.2d at 38.

The governmental immunity argument, obviously, was not presented in *Clark*, but we take note of the opinion because it appears to recognize that actions brought under the Act by the Director may be analyzed differently than actions initiated, as in *Clark*, by employees in their individual capacity. The distinction between a suit brought to enforce employees' rights by a governmental entity and one brought by an individual employee was addressed directly in *People ex rel. Martin v. Schwartz Oil Field Services, Inc.* (1990), 203 Ill. App. 3d 903, 561 N.E.2d 201. There, the Director sued to recover unpaid overtime pay pursuant to section 12(b) of the Illinois Minimum Wage Law (Ill. Rev. Stat. 1987, ch. 48, par. 1012(b)) (IMWL). The IMWL, like the IWPCA, provides for suit either by the aggrieved employee or by the Director. The legislative scheme there, however, explicitly provides for a three-year limitation period for individual suits (section 12(a)), and is silent with respect to any limitation period for suits brought by the Director (section 12(b)). On appeal, the Director argued both that the legislative intent was not to apply the three-year limitation period to actions under section 12(b) and that common law governmental immunity to statutes of limitation applied. The court agreed with both arguments. The court's rationale with respect to the latter is particularly instructive for our purposes today:

> "The purpose of the IMWL is to ensure adequate wage standards for the benefit of both workers and the taxpayers, and a violation of the law is a breach of public policy. (Ill. Rev. Stat. 1987, ch. 48, par. 1002.) The State has a clear and definite in-

terest in enforcing this policy." 203 Ill. App. 3d at 907, 561 N.E.2d at 203.

Similarly, it has been held that the primary purpose of the IWPCA "is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits." (*Mueller Co. v. Department of Labor* (1989), 187 Ill. App. 3d 519, 524, 543 N.E.2d 518, 521.) Obviously, enforcing the public policy underlying the IWPCA inures to the benefit of Illinois workers and taxpayers in precisely the way that the IMWL does. An employer's denial of benefits earned by its employees burdens the State financially and socially, such as by decreasing the tax base and potentially depleting State assistance funds. Moreover, we believe that by authorizing the Director to prosecute civil actions for unpaid benefits and penalties (Ill. Rev. Stat. 1989, ch. 48, par. 39m—11) and to expend State resources to enforce the Act the legislature thereby expressed its intent to benefit the public generally. Thus, notwithstanding the legislature's silence with respect to any limitation period under the IWPCA, we do not hesitate to find that the public has a clear and definite interest in enforcing the IWPCA, and that the "right" the Director seeks to vindicate in an action brought on behalf of aggrieved employees belongs to the public. Based on this finding, we further hold, as in *Schwartz*, that suits brought by the Director under the IWPCA are immune from statutory limitation periods of the Civil Practice Act.

The judgment of the circuit court of La Salle County is reversed, and we remand this cause for further proceedings.

Reversed; cause remanded.

SLATER and GORMAN, JJ., concur.